### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW HAMPSHIRE


Christopher Palermo

    v.                             Civil No. 12-cv-86-SM

R. N. Van Wickler et al.[1]


### REPORT AND RECOMMENDATION


Before the court is Christopher Palermo's complaint, construed to consist of a complaint and addenda thereto that Palermo has filed in this case (doc. nos. 1, 5, 10-12, and 15), and assertions made in Palermo's motion for a preliminary injunction (doc. no. 14).  Palermo is a pretrial detainee at the Cheshire County Department of Corrections ("CCDC").  Because Palermo is a prisoner, the complaint is before the magistrate judge for a preliminary review.  See United States District Court, District of New Hampshire Local Rule ("LR") 4.3(d)(2); see also 28 U.S.C. § 1915A.

---

[1]Palermo has named the following employees of the Cheshire County Department of Corrections as defendants in the caption of this action: Superintendent R. N. Van Wickler, Corrections Officer ("C.O.") Trombi (first name unknown ("FNU")), C.O. FNU Gagnon, Maj. FNU Mousseau, Dr. Dave Segal, and Sgt. FNU Marsh. Palermo includes defendants Sgt. FNU Irwin, C.O. FNU Narkun, and C.O. FNU Schart in the narrative of the complaint.

## Standard for Preliminary Review

Pursuant to LR 4.3(d)(2) and 28 U.S.C. § 1915A, the magistrate judge conducts a preliminary review of prisoner complaints before defendants have an opportunity to respond to the claims.  The magistrate judge may direct service of the complaint, or, as appropriate, recommend to the district judge that one or more claims be dismissed if:  the court lacks subject matter jurisdiction, a defendant is immune from the relief sought, the complaint fails to state a claim upon which relief may be granted, the allegation of poverty is untrue, or the action is frivolous or malicious.  See 28 U.S.C. § 1915A(a); LR 4.3(d)(2).

In determining whether to dismiss claims asserted in a pro se plaintiff's complaint for failure to state a claim upon which relief can be granted, the court decides whether the complaint, construed liberally, contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); Sepúlveda-Villarini v. Dep't of Educ., 628 F.3d 25, 29 (1st Cir. 2010); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (pro se pleadings are construed liberally).  To make

this determination, the court treats as true all well-pleaded factual allegations, and construes all reasonable inferences drawn therefrom in the plaintiff's favor, to determine if the claim is plausible.  See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Twombly, 550 U.S. at 555 (citations and footnote omitted)).

## Discussion[2]

I.   Access to the Courts

Palermo alleges that he has been denied access to the courts.  Prisoners have a constitutionally-protected right of access to the courts, which affords them access to the tools necessary to challenge their criminal cases, convictions, and sentences directly or collaterally, to file habeas petitions, or to challenge the conditions of their confinement through civil rights actions.  See Lewis v. Casey, 518 U.S. 343, 355 (1996).  To state a claim that he was denied meaningful access to the

---

[2]The court finds that the allegations in the complaint are properly construed to assert claims for relief as identified herein, and that no other claims for relief are asserted.

courts, plaintiff must demonstrate that the legal resources
available to him were inadequate to meet his need to conduct
legal research.  See Bounds v. Smith, 430 U.S. 817, 832 (1977),
overruled in part on other grounds by Lewis, 518 U.S. at 354.
Plaintiff must further plead that his legal status was harmed by
the deprivation of adequate legal materials.  See Lewis, 518
U.S. at 351.

Palermo states that he has been denied adequate access to
the CCDC's law library and legal research resources.  As a
result, he has missed deadlines in lawsuits he has filed in
state and federal court, and has been unable to present certain
claims, or preserve certain issues for appeal.  Palermo has
stated the minimal facts necessary to assert a denial of access
to the courts claim against CCDC Superintendent R. N. Van
Wickler, as well as CCDC Maj. Mousseau, the individuals he
asserts were responsible for denying him constitutionally
adequate library and legal research access.  The court has
directed service of this claim in an order issued on this date.

II.  Excessive Force

Palermo next alleges an excessive force claim.  The "Due
Process Clause protects a pretrial detainee from the use of
excessive force that amounts to punishment."  Graham v. Connor,

4

490 U.S. 386, 395 n.10 (1989); see also Bell v. Wolfish, 441
U.S. 520, 535-59 (1979) (detainee's Fourteenth Amendment right
not to be subjected to excessive force is at least as protective
as analogous Eighth Amendment right of convicted prisoners).
The applicable Eighth Amendment standard is "whether force was
applied in a good-faith effort to maintain or restore
discipline, or maliciously and sadistically to cause harm."
Hudson v. McMillian, 503 U.S. 1, 7 (1992).  The relevant factors
for the court to consider in evaluating an excessive force claim
are:  the need for force; the relationship between that need and
the amount of force applied; the extent of any injury inflicted;
the "threat 'reasonably perceived by the responsible
officials;'" and the "'efforts made to temper the severity of a
forceful response.'"  Id. at 7 (quoting Whitley v. Albers, 475
U.S. 312, 321 (1986)).

     Palermo states that on one occasion, he was showing
Mousseau paperwork in his cell to prove that he was seeking law
library access for active cases, when Mousseau slammed Palermo's
head into the wall, causing Palermo's nose to bleed and his face
to swell.  The complaint states no facts from which the court
can reasonably infer that the assault was provoked or that the
use of force was otherwise necessary.  Accordingly, Palermo has

stated sufficient facts to assert an excessive force claim against Mousseau at this time, and the court, in an order issued on this date, has directed service of this claim.

III. <u>Dental Care Items</u>

Palermo has alleged that CCDC provided him with constitutionally inadequate dental care items.  A pretrial detainee claiming that he has been subjected to unconstitutional conditions of confinement must demonstrate that, "from an objective standpoint, the conditions of his confinement deny him the minimal measure of necessities required for civilized living."  <u>Surprenant v. Rivas</u>, 424 F.3d 5, 18 (1st Cir. 2005) (citing <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994)).  Further, the plaintiff must demonstrate that "from a subjective standpoint, the defendant was deliberately indifferent to inmate health or safety."  <u>Surprenant</u>, 424 F.3d at 18-19 (citing <u>Farmer</u>, 511 U.S. at 836-37).

Palermo alleges that the CCDC provided him with toothpaste that made him ill, and that when he complained, he was told not to use the toothpaste and was not provided with new toothpaste. Mousseau also directed that C.O. Gagnon take Palermo's toothbrush away.  Palermo states that as a result, he has

suffered bleeding gums, plaque build-up on his teeth, tongue
swelling, and pain with chewing.

Palermo has not alleged facts to demonstrate that any
defendant was aware of and disregarded a significant risk to
Palermo's health and safety that would result from that
deprivation, and has thus failed to establish that the
defendants acted with deliberate indifference.  Accordingly,
Palermo has failed to state a claim arising out of the denial of
dental care items, and the claim should be dismissed.

IV.  Medical and Mental Health Care

Palermo also alleges that the CCDC has exhibited deliberate
indifference to his medical needs.  A pretrial detainee's right
to adequate medical and mental health care during his
incarceration arises under the Fourteenth Amendment's Due
Process Clause.  See Surprenant, 424 F.3d at 18 (Fourteenth
Amendment rights for pretrial detainees as to prison conditions
are coextensive with Eighth Amendment protection due to
convicted prisoners).  In order to state a constitutional claim
for the denial of medical or mental health care, an inmate must
allege that defendants have committed "acts or omissions . . .
sufficiently harmful to evidence deliberate indifference to
serious medical needs."  Leavitt v. Corr. Med. Servs., 645 F.3d

484, 497 (1st Cir. 2011) (internal quotations and citation
omitted).

A.   <u>Medical Care Claims</u>

Palermo asserts the following complaints concerning his
medical care at the CCDC:

- Palermo experienced chest pain and high blood
  pressure, and Dr. Dave Segal[3] refused to provide him
  with diagnostic testing or treatment, instead telling
  Palermo to "stop complaining so much" to try to bring
  his blood pressure down.

- Segal refused to treat Palermo's neck, back, leg, and
  head pain from a 2007 accident for which he has
  previously received pain medication.

- Palermo has Hepatitis C, and was told after a 2009
  liver biopsy that he should look into receiving
  treatment in two years.  Palermo was denied treatment
  by Van Wickler and Segal.  A nurse told Palermo that
  he was denied treatment because it is costly and
  because CCDC does not treat drug users.

- Palermo complained to Segal of numb fingers after
  cutting his forearm and getting stitches.  Segal said
  "oh well," and did nothing to treat or diagnose his
  numbness.

Construed liberally, plaintiff has alleged that Segal was
aware of Palermo's chest pains, high blood pressure, neck, back,
leg, and head pain, Hepatitis C, and numb fingers consequent to
a forearm laceration requiring sutures, that are all, plausibly,

---

[3]While Palermo refers to Segal as "Dr." throughout the
complaint, he also states that Segal is a physician's assistant,
not a physician.

8

serious medical problems requiring further diagnosis or treatment, and that Segal did nothing to provide Palermo with any medical care for those conditions. Accordingly, the claim is sufficiently stated to proceed against Segal at this time, and the court has directed service of the claim in an order issued on this date.

### B.   Mental Health Care Claims

At the CCDC, Palermo saw a mental health provider once or twice a month for a few minutes each time, which was insufficient to his needs, and that as a result, his mental health declined. Palermo acknowledges that he has received psychiatric medication three times a day from the CCDC. Palermo has not alleged any facts to indicate that any mental health care provider was aware of and disregarded any serious risk to Palermo's mental health resulting from a lack of therapy, or otherwise. Accordingly, Palermo has failed to allege sufficient facts to state a claim for constitutionally inadequate mental health care at the CCDC, and the claim should be dismissed.

### V.   Payment for Medical Treatment

Palermo alleges that the CCDC violated his constitutional rights by requiring him to pay for certain treatment. Prison

officials may not deny necessary medical treatment due to an inmate's lack of funds, or condition such treatment upon an inmate's ability to pay.  See Canon v. Mason, 340 F. App'x 495, 498 (10th Cir. 2009).

> If a prisoner is able to pay for medical care, requiring such payment is not deliberate indifference to serious medical needs.  Instead, such a requirement simply represents an insistence that the prisoner bear a personal expense that he or she can meet and would be required to meet in the outside world.

Id. at 499.

Palermo alleges that Segal told him that he would have to pay $1000.00 to receive an appointment with a pain specialist. Palermo also alleges that the CCDC charges a $300.00 copay for prescription eyeglasses.  While Palermo states that he is indigent, he does not allege sufficient facts to show that he actually needed to see a pain specialist (although he does state he wanted to see one), or that he needed and was denied prescription glasses.  Accordingly, he has failed to state a claim arising out of a requirement that he pay for certain medical services, and the claim should be dismissed.

VI.   Endangerment

Palermo alleges that CCDC officers failed to take obvious precautions to protect him from self-harm.  The constitution

10

requires prison officials to take "reasonable measures to guarantee the safety of the inmates." Farmer, 511 U.S. at 832-33.  To establish unconstitutional endangerment, an inmate must assert facts to demonstrate that, objectively, he was incarcerated "under conditions posing a substantial risk of serious harm," and that the involved prison officials knew of and disregarded the excessive risk to the inmate's safety.  Id. at 834; see also Mosher v. Nelson, 589 F.3d 488, 493 n.3 (1st Cir. 2009) (same standard applies to convicted prisoner's Eighth Amendment and pretrial detainee's Fourteenth Amendment endangerment claims).

On May 25, 2012, while housed in segregation, Palermo told C.O. Narkum that he was suicidal, had a blade, and that he intended to "cut up."  Narkum responded: "Make sure you do a good job."  Palermo then, for five hours, cut himself in the forearm, to the bone, covering his cell in blood.  Palermo alleges that Sgt. Barret and Sgt. Schart saw what he was doing and did nothing to help him, and that when they saw him, they said: "You're okay, you're not dead yet," and that if Palermo died, it would free up cell space.

The officers did not intervene to assist Palermo until he lost consciousness from blood loss, at which point they woke him

with a Taser, handcuffed him behind his back despite the cuts on his forearms, and transported him to booking.  One hour later, Palermo saw Segal, who gave him twelve stitches.  Palermo was returned to his segregation cell the following morning without any evaluation of his mental health or suicidality.

Palermo has stated sufficient facts to demonstrate that Narkum, Barret, and Schart were all aware of a serious risk to Palermo's safety, and intentionally disregarded the risk, apparently in an effort to see Palermo come to serious harm. The allegations are sufficient to state endangerment claims against those defendants.  In an order issued on this date, the court has directed service of these claims.

VII. <u>Forced Medication</u>

Palermo alleges that he was coerced or forced to take psychiatric medication at the CCDC.  Prison inmates have "a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment."  <u>Washington v. Harper</u>, 494 U.S. 210, 221-22 (1990).  To satisfy due process, a prison policy that infringes an inmate's interest in refusing medical treatment must be reasonably related to a legitimate penological

interest.  Id. at 223 (citing Turner v. Safley, 482 U.S. 78, 89 (1987)).

Palermo alleges that when he attempted to discontinue psychiatric medication, to avoid a $10.00 monthly copay, Segal told Palermo that if he did so, he would be subjected to disciplinary action and segregation for refusing his medication. At this stage of the proceedings, while Palermo has not explained precisely what action he took in response to Segal's threat of disciplinary sanctions, Palermo has stated facts sufficient to allow the court to draw the plausible inference that he continued to take the medication against his will.  The undeveloped record presently before the court does not demonstrate that coercing Palermo to take medication against his will was reasonably related to any legitimate penological interest.  Accordingly, Palermo has stated sufficient facts to allow a due process claim to proceed against Segal, and the court has directed service of this claim in the order issued on this date.

VIII. Segregation

Palermo alleges that he was improperly placed in punitive segregation at the CCDC.  To satisfy the Fourteenth Amendment, pretrial detainees must be housed in prison conditions that do

13

not amount to punishment for their underlying offenses.  See
Bell, 441 U.S. at 535.  Restrictive conditions are not punitive,
however, if they are reasonably related to the furtherance of
legitimate institutional security interests.  See id. at 539.

Palermo claims that, as of May 28, 2012, he had been housed
in total segregation from other inmates at the CCDC for 103
consecutive days, without having had any behavioral or
disciplinary problems.  Palermo states that this is different
than treatment received by other inmates.[4]  The record does not
reflect any facts that allow the court to conclude that
subjecting a pretrial detainee without disciplinary issues to
such harsh prison conditions is reasonably related to any
legitimate penological concerns.  The court finds that Palermo
has stated sufficient facts to assert a plausible claim that his
incarceration in segregation is punitive in nature, in violation
of the Fourteenth Amendment, to allow the claim to proceed
against Van Wickler who, Palermo alleges, ordered Palermo's
segregation.  Accordingly, the court has directed that this
claim be served in the order issued on this date.

---

[4]Palermo, not aware of a specific reason for his
differential treatment, opines that, by default, it must be due
to his religious or political views.  The bald assertion,
unsupported by any facts, will not be further considered.

IX.  Retaliation

Palermo alleges that defendants retaliated against him for engaging in litigation against the CCDC.  The First Amendment shields prisoners from retaliation in response to their engaging in protected speech.  Ortiz v. Jordan, 131 S. Ct. 884, 893 (2011) (citing Crawford-El v. Britton, 523 U.S. 574, 592 (1998)).  In order to state a claim for retaliation for the exercise of his First Amendment rights, Palermo must allege facts to demonstrate that: (1) the conduct which led to the alleged retaliation was protected by the First Amendment; (2) he was subjected to adverse action at the hands of prison officials; and (3) there was a causal link between the exercise of Palermo's First Amendment rights and the adverse action taken.  See Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011), cert. denied, 132 S. Ct. 1105 (2012).

Palermo has a First Amendment right to file a civil lawsuit complaining of prison conditions.  See id. at 48. "[A]n adverse act that is 'de minimis' does not give rise to a cognizable retaliation claim, . . . [but] an adverse act is not de minimis if it would chill or silence a person of ordinary firmness from future First Amendment activities."  Starr v. Dube, 334 F. App'x

341, 342 (1st Cir. 2009) (internal quotation marks and citation omitted).

Palermo states that when Van Wickler found out Palermo was filing a civil suit complaining of conditions at the CCDC, he denied Palermo five meals and threatened to transfer him to a jail "west of the Mississippi" with no access to legal materials or his criminal attorney.  In response to Palermo's civil litigation, Mousseau: eliminated any record of Palermo's having filed grievances; said to Palermo, "lawsuits can get messy both for my hand and for your stay at the jail;" and threatened to have Palermo transferred to a less desirable facility.  Threats made to a detainee of transfer out of state, denial of meals, and physical violence are sufficient to state a plausible claim that defendants threatened to take non-de minimis adverse acts in response to Palermo's exercise of his right to file suit. Accordingly, Palermo states sufficient facts to allow retaliation claims to proceed against Van Wickler and Mousseau, and the court, in an order issued on this date, has directed service of these claims.

16

X.    Denial of Food

Palermo asserts that his right to adequate conditions of confinement was violated when he was denied food for four days.[5] As discussed above, a prison official may violate the Fourteenth Amendment rights of a pretrial detainee when the official creates or disregards a serious risk of harm to the inmate.  See Surprenant, 424 F.3d at 18-19 (citing Farmer, 511 U.S. at 836-37).  "[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."  Farmer, 511 U.S. at 842.

Prison officials must provide inmates with a nutritionally adequate diet.  See id. at 832.  The failure to provide an inmate with sufficient food to maintain his health denies the inmate adequate nutrition.  See Foster v. Runnels, 554 F.3d 807, 813 (9th Cir. 2009).  The denial of adequate nutrition creates a serious risk of harm to an inmate.  See id. at 814.  "The risk

_____

[5]Palermo states that Irwin denied him food for refusing to write, 500 times, "I will not call the Major a stupid asshole and I will not tell the superintendent to fuck himself," in response to Palermo having made those statements.  To the extent Irwin may assert that Palermo voluntarily refused meals by failing to complete his writing assignment, Irwin will have to demonstrate that the deprivation of food in this case was reasonable, and that withholding food from Palermo was not "an unjustified and unnecessarily punitive response to a rules violation."  Foster v. Runnels, 554 F.3d 807, 813 (9th Cir. 2009) (internal citation omitted).

that an inmate might suffer harm as a result of the repeated
denial of meals is obvious," and the "refus[a]l to provide [an
inmate] with meals on numerous occasions" may therefore
constitute deliberate indifference.  Id.; see id. (denial of
sixteen meals over twenty-three days, causing weight loss,
sufficient to state Eighth Amendment claim); see also Feliciano
v. Burset, No. 79-4(PG), 2010 WL 4922700, *17 (D.P.R. Dec. 2,
2010) (collecting cases).

The complaint alleges sufficient facts to support a
reasonable inference that Irwin, in not allowing Palermo any of
his meals for four days, disregarded an obvious risk to his
health.  Accordingly, Palermo has stated a Fourteenth Amendment
claim for the denial of food, and the court has directed service
of this claim in an order issued this date.

XI.  Religious Practice

Palermo asserts a claim that his right to practice his
religion was improperly infringed at the CCDC.  Inmates have a
First Amendment right to exercise their religion in jail that
may be restricted by prison officials only when such restriction
is "reasonably related to legitimate penological interests."
See Beard v. Banks, 548 U.S. 521, 528 (2006) (quoting Turner,
482 U.S. at 89).  Further, the Religious Land Use and

18

Institutionalized Persons Act, 42 U.S.C. § 2000cc-1(a)

("RLUIPA"), prohibits prison officials' actions that place a

substantial burden on an inmate's religious exercise, unless the

action is the least restrictive means of furthering a compelling

governmental interest.  Accordingly, when an inmate asserts that

his right to engage in religious exercise has been abridged, his

claim arises under both the Free Exercise Clause and RLUIPA.

Palermo alleges that he is a member of the Asatrú religion.

Palermo states that he has been denied access to a religious

diet, group worship in a chapel setting with an Asatrú

clergyperson, religious items, and religious literature.

Palermo states that both Mousseau and Van Wickler have denied

these items to Palermo because they refuse to recognize Asatrú

as a "real religion."[6]  The complaint states the minimal facts

necessary to demonstrate that Mousseau and Van Wickler have

denied Palermo the ability to practice his religion, in

violation of the Free Exercise Clause and RLUIPA, without a

legitimate basis.  Accordingly, Palermo's Free Exercise and

---

[6]Asatrú has been recognized by courts and correctional
institutions as a "nonmainstream" religion.  See, e.g., Cutter
v. Wilkinson, 544 U.S. 709, 713 (2005) (noting that parties
before the court had stipulated that Asatrú prisoner plaintiffs
were members of bona fide religions).

RLUIPA claims may proceed against Mousseau and Van Wickler, and
the court has directed service of these claims.

XII. <u>Legal Mail</u>

Palermo's final claim is that defendants improperly
interfered with his receipt of legal mail.  The Sixth Amendment
protects a criminal defendant's right to the assistance of
counsel in the proceedings against him, which includes the right
to private communication with his attorney without intrusion by
the government.  See <u>Greater Newburyport Clamshell Alliance v.</u>
<u>Pub. Serv. Co. of N.H.</u>, 838 F.2d 13, 19-20 (1st Cir. 1988)
(citing <u>Weatherford v. Bursey</u>, 429 U.S. 545, 554 (1977)).  To
state a Sixth Amendment violation, plaintiff must demonstrate
both governmental intrusion and prejudice that arose out of the
intrusion.  See <u>United States v. DeCologero</u>, 530 F.3d 36, 64
(1st Cir. 2008) (no Sixth Amendment claim asserted where
plaintiff did not allege that confidential information was
provided to prosecutor); <u>see also</u> <u>Weatherford</u>, 429 U.S. at 558.

Palermo states that he received legal mail at the CCDC that
was opened outside of his presence, that one or more officers
were aware of the contents of his mail, and that occasionally
inmate mail is sent to the wrong inmate.  Palermo has not
asserted that any prejudice to his criminal case has occurred as

a result of those actions.  Accordingly, he has failed to state a Sixth Amendment Claim arising out of the allegations in his complaint related to mail, and the claim should be dismissed.

### Conclusion

In an order issued simultaneously with this report and recommendation, the court directs service of the following claims: access to the courts; excessive force; inadequate medical care; endangerment; forced medication; segregation; retaliation; denial of food; Free Exercise Clause; and RLUIPA, against defendants Van Wickler, Mousseau, Segal, Narkun, Barret, Schart, and Irwin, as specified more fully above.  For the reasons stated in this report and recommendation, the remaining claims and defendants in this action should be dismissed.

Any objections to this report and recommendation must be filed within fourteen days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  Failure to file objections within the specified time waives the right to appeal the district court's order.  See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011), cert. denied, 132 S. Ct. 1045 (2012); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to review by district

court; issues not preserved by such objection are precluded on

appeal).

_____
Landya McCafferty
United States Magistrate Judge

Date:  June 13, 2012

cc:  Christopher Palermo, pro se

LBM:jba